# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

     **Plaintiff,**

**v.**                                No.    **07-cr-0286 LH**
                                                        **16-cv-0641 LH/SMV**

**LEONARD G. MARQUEZ,**

     **Defendant.**

## MAGISTRATE JUDGE'S
## PROPOSED FINDINGS AND RECOMMENDED DISPOSITION

THIS MATTER is before me on Defendant Leonard Marquez's Motion to Correct Sentence Pursuant to 28 U.S.C. § 2255, filed June 23, 2016.[1] [CR Doc. 59; CV Doc. 1]. The United States responded on September 22, 2016. [CR Doc. 66; CV Doc. 8]. Marquez replied on December 5, 2016. [CR Doc. 73; CV Doc. 15]. The C. Honorable LeRoy Hansen, Senior United States District Judge, referred this matter to me for analysis and a recommended disposition. [CR Doc. 60; CV Doc. 2]. Having considered the briefing, relevant portions of the underlying criminal record, and relevant authorities, and being otherwise fully advised in the premises, I find that Marquez's prior convictions for violating NMSA 1978, §§ 30-3-2(A) (aggravated assault with a deadly weapon) and 30-16-3(A) (residential burglary) qualify as violent felonies under the Armed Career Criminal Act, 18 U.S.C. § 924(e)(2)(B), irrespective of the now-unconstitutional residual clause. Therefore, his sentence is not unconstitutional and he

---

[1] Concomitantly with the motion, which was filed by his attorney, Marquez himself submitted two filings pro se, a Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody [CR Doc. 61; CV Doc. 3] and Memorandum of Supporting Facts [CR Doc. 62; CV Doc. 4], which were docketed on June 27, 2016.

is not entitled to re-sentencing pursuant to *Johnson v. United States* and *Welch v. United States*. His motion should be denied.

## Background

On February 16, 2007, Marquez was charged with being a felon in possession of a firearm, 18 U.S.C. §§ 922(g)(1), 924(a)(2). Presentence Report ("PSR") at 3. On September 8, 2010, he pleaded guilty to the offense. *Id.*

United States Probation and Pretrial Services had prepared his PSR. *Id.* The PSR provided that Marquez qualified as an armed career criminal under the Armed Career Criminal Act ("ACCA") because he had at least three prior violent felony convictions: two for residential burglary in New Mexico, one for aggravated assault with a deadly weapon in New Mexico, and one for attempted robbery in New Mexico. *Id.* at 7–8. With the armed career criminal enhancement, Marquez's offense level was 33.[2] *Id.* at 7. Based on a downward adjustment for acceptance of responsibility, his total offense level was 30, with a criminal history category of VI and a guideline imprisonment range of 168–210 months. *Id.* at 8, 31. On March 29, 2011, the Court sentenced Marquez to 180 months' imprisonment. [CR Doc. 57]. Marquez did not appeal his sentence. The instant case is his first motion under § 2255.

---

[2] In calculating his *base* offense level, the PSR indicated that Marquez's prior convictions for residential burglary, aggravated assault, and attempted robbery constituted "crimes of violence" under § 4B1.2(a) of the U.S. Sentencing Guidelines Manual ("Guidelines"). PSR at 6–7. Pursuant to § 2K2.1(a), the provision that sets out the sentencing guideline for § 922(g)(1) offenses, Marquez had a base offense level of 24 stemming from these prior convictions for "crimes of violence." *Id.* His total offense level was then calculated from this base offense level. Marquez does not challenge his enhancement under § 2K2.1(a).

<u>**Motions under § 2255 and *Johnson v. United States***</u>

Pursuant to 28 U.S.C. § 2255(a), a "prisoner in custody" pursuant to a federal conviction may "move the court . . . to vacate, set aside or correct the sentence" if it "was imposed in violation of the Constitution or laws of the United States."

In *Johnson v. United States*, 135 S. Ct. 2551, 2557 (2015), the Supreme Court held that the so-called "residual clause" of the definition of "violent felony" in the ACCA was unconstitutionally vague. The ACCA defined "violent felony" as follows:

> any crime punishable by imprisonment for a term exceeding one year . . . that —
> (i) has as an element the use, attempted use, or threatened use of physical force against the person of another; or
> (ii) is burglary, arson, or extortion, involves use of explosives, *or otherwise involves conduct that presents a serious potential risk of physical injury to another*.

18 U.S.C. § 924(e)(2)(B) (emphasis added). The closing words of this definition, italicized above, have come to be known as the "residual clause."

The Court explained that the residual clause left "grave uncertainty" about "deciding what kind of conduct the 'ordinary case' of a crime involves." *Johnson*, 135 S. Ct. at 2557. That is, the residual clause "denie[d] fair notice to defendants and invite[d] arbitrary enforcement by judges" because it "tie[d] the judicial assessment of risk to a judicially imagined 'ordinary case' of a crime, not to real-world facts or statutory elements." *Id.* Second, the ACCA's residual clause left "uncertainty about how much risk it takes for a crime to qualify as a violent felony." *Id.* at 2558. By combining these two indeterminate inquiries, the Court held, "the residual clause

3

produces more unpredictability and arbitrariness than the Due Process Clause tolerates." *Id.* On that ground it held the residual clause void for vagueness. *Id.*

Soon thereafter, the Court determined that the ruling in *Johnson* was substantive (as opposed to procedural) and, therefore, had "retroactive effect in cases on collateral review." *Welch v. United States*, 136 S. Ct. 1257, 1268 (2016). Accordingly, *Welch* opened the door for individuals sentenced under the residual clause of the ACCA's violent-felony definition to move to vacate their sentences as unconstitutional under § 2255.

### **Marquez's § 2255 Motion**

Marquez was designated as an armed career criminal—and thus, his sentence was enhanced—based on four prior felony convictions: two for New Mexico residential burglary,[3] NMSA 1978, § 30-16-3(A), and one each for New Mexico aggravated assault with a deadly weapon, NMSA 1978, § 30-3-2(A), and New Mexico attempted robbery, NMSA 1978, §§ 30-16-2, 30-28-1. This designation was based on a determination that all four convictions qualified as violent felonies under § 924(e)(2)(B) of the ACCA. PSR at 7–8, 31.

Marquez argues that his prior convictions could have qualified as violent felonies[4] (and, thus, counted toward his armed career criminal designation) only under the now-invalidated

---

[3] The PSR provides that Marquez had two prior New Mexico residential burglary convictions (both of which qualified as violent felonies and contributed to his armed career criminal designation, along with his convictions for aggravated assault and attempted robbery). PSR at 7–8; *see also* PSR at 10–11, 18–19. In his motion, Marquez states that he had just one residential burglary conviction, though he cites to the PSR for this point. [CV Doc. 1] at 1–2, 19. Marquez subsequently refers to his prior burglary "convictions," acknowledging more than one. [CV Doc. 15] at 10. Based on my own review of the PSR (and the fact that Marquez himself cited the PSR in identifying his prior relevant convictions and subsequently referred to multiple residential burglary convictions), I am satisfied that Marquez had two prior convictions for residential burglary, and four convictions total for purposes of this analysis.

[4] At various points in his briefing, Marquez uses the term "crime of violence" rather than "violent felony" to refer to the qualifying standard that triggers a sentencing enhancement under the ACCA. *E.g.*, [Doc. 1] at 2, 9, 19. "Violent

4

residual clause, entitling him to be resentenced. The United States does not argue that Marquez's prior conviction for attempted robbery can be used to enhance his sentence under the ACCA.[5] [Doc. 9][6] at 2. The United States contends that his two residential burglary convictions qualify under the ACCA's so-called "enumerated clause," which designates certain specific crimes, including burglary, as violent felonies.[7] *Id.* The government further contends that whether Marquez has a third qualifying violent felony—and thus whether his sentence was properly enhanced—depends on whether his aggravated assault conviction qualifies under the so-called "force clause" of the ACCA. *Id.* It concludes that the Tenth Circuit's decision in *United States v. Maldonado-Palma*, 839 F.3d 1244 (10th Cir. 2016), disposes of this issue and thus determines the ultimate outcome of this case. [Doc. 8] at 3–4.

I find that Marquez's prior convictions for residential burglary and aggravated assault qualify as violent felonies even absent the unconstitutional residual clause. His prior burglary convictions qualify under the enumerated clause because New Mexico residential burglary is substantially similar to generic burglary. And, based on the holding of *Maldonado-Palma*, his prior conviction for aggravated assault with a deadly weapon qualifies under the force clause. Therefore, I recommend that Marquez not be resentenced and that his § 2255 motion be denied.

---

felony" is the appropriate term. *See* § 924(e)(1), (2)(B). "Crime of violence" is the term used in career offender sentencing enhancement pursuant to the sentencing guidelines. *See* Guidelines §§ 2K2.1(a), 4B1.2(a).

[5] The government clarifies that it concedes this argument "for purposes of this case alone." [Doc. 8] at 2.

[6] Unless specifically noted otherwise, citations to document numbers refer to the docket in the civil case, case number 16-cv-0641 LH/SMV.

[7] The government does not challenge Marquez's assertion that New Mexico residential burglary does not qualify as a violent felony under the so-called "force clause" of the ACCA. *See* [Doc. 1] at 20. The parties dispute only whether Marquez's prior residential burglary convictions qualify under the enumerated clause.

**<u>Marquez's convictions for New Mexico residential burglary
qualify as enumerated violent felonies under the ACCA.</u>**

<u>To determine whether a prior conviction qualifies as a violent felony under
the enumerated clause, courts compare the elements of the crime of conviction
with the elements of the generic offense.</u>

The enumerated clause of § 924(e)(2)(B) provides that an underlying felony conviction is a "violent felony" if it "is burglary, arson, or extortion, [or] involves use of explosives." To determine whether a past conviction qualifies as one of the offenses enumerated in § 924(e)(2)(B)(ii), courts compare the elements of the crime of conviction with the elements of the "generic" version of the listed offense—in other words, "the offense as commonly understood." *Descamps v. United States*, 133 S. Ct. 2276, 2281 (2013). A prior conviction qualifies as an enumerated ACCA predicate offense only if its elements are the same as, or narrower than, those of the generic offense. *Id.*; *Mathis v. United States*, 136 S. Ct. 2243, 2247 (2016). State law defines the substantive elements of the crime of conviction. *United States v. Harris*, 844 F.3d 1260, 1264 (10th Cir. 2017). And federal law governs the definition and scope of the generic offense. *Id.*; *United States v. Rivera-Oros*, 590 F.3d 1123, 1126 (10th Cir. 2009).

"A state statute does not need to match the generic definition verbatim." *Rivera-Oros*, 590 F.3d at 1133. It need only "correspond[] in substance to the generic meaning." *Taylor v. United States*, 495 U.S. 575, 599 (1990). "[T]o find that a state statute creates a crime outside the generic definition . . . . requires a *realistic probability*, not a theoretical possibility, that the State would apply its statute to conduct that falls outside the generic definition of a crime." *Rivera-Oros*, 590 F.3d at 1133 (quoting *Gonzales v. Duenas-Alvarez*, 549 U.S. 183, 193 (2007)).

In undertaking this comparison of elements, courts generally apply the so-called "categorical approach." That is, courts consider only whether the elements of the crime of conviction sufficiently match the elements of the generic offense, while ignoring the particular facts of the case. *Mathis*, 136 S. Ct. at 2248 (citing *Taylor*, 495 U.S. at 600–01). If the underlying statute of conviction "sweeps more broadly than the generic crime," the prior conviction cannot qualify as an ACCA predicate, irrespective of whether the defendant's actual conduct in committing the crime would qualify under the generic offense. *Descamps*, 133 S. Ct. at 2283.

Some statutes, however, have a more complicated structure and require a slightly different approach. A single statute may be "divisible"—it may list elements in the alternative—and thereby define multiple crimes. *Id.* at 2281. When a statute defines multiple crimes by listing alternative elements, courts undertake the "modified categorical approach" to determine *which* of the multiple alternative elements listed in the statute applied to convict the defendant. *Id.* Under the modified categorical approach, a sentencing court looks to the record of conviction to determine what crime, with what elements, a defendant was convicted of. The court then compares the elements of that crime, as the categorical approach commands, with the elements of the relevant generic offense. *Id.*

The Supreme Court has provided guidance for determining whether a statute is indivisible or divisible and, thus, whether to implement the modified categorical approach first or proceed directly to the categorical approach. *Mathis*, 136 S. Ct. at 2256–57. The central question is whether the statute lists multiple *elements* disjunctively, thereby creating multiple

different crimes (i.e., a divisible statute, triggering the modified categorical approach), or whether it enumerates various factual *means* of committing a single element (i.e., an indivisible statute, requiring the categorical approach). *Id.* at 2249–50. If a state court decision "definitively answers the question," then a sentencing judge "need only follow what it says." *Id.* at 2256. Or, "the statute on its face may resolve the issue." *Id.* If statutory alternatives carry different punishments, then they must be elements (and, thus, the statute divisible, triggering the modified categorical approach). *Id.* (citing *Apprendi v. New Jersey*, 530 U.S. 466 (2000)). "Conversely, if a statutory list is drafted to offer 'illustrative examples,' then it includes only a crime's means of commission." *Id.*

<u>New Mexico burglary, § 30-16-3, is divisible into its two subsections,</u>
<u>and Marquez was convicted under subsection A.</u>

I find that Marquez's statute of conviction, § 30-16-3, is divisible. The statute reads:

> **Burglary.**
>
> Burglary consists of the unauthorized entry of any vehicle, watercraft, aircraft, dwelling or other structure, movable or immovable, with the intent to commit any felony or theft therein.
>
> **A.** Any person who, without authorization, enters a dwelling house with intent to commit any felony or theft therein is guilty of a third degree felony.
>
> **B.** Any person who, without authorization, enters any vehicle, watercraft, aircraft or other structure, movable or immovable, with intent to commit any felony or theft therein is guilty of a fourth degree felony.

§ 30-16-3. The statute is divisible into subsections A and B, which separate the alternative elements. A plain-text reading of the statute shows that New Mexico burglary is divided into

residential burglary and all other types of burglary. Furthermore, the subsections carry different penalties. Subsection A, burglary of a "dwelling house," is a third degree felony. *Id.* Subsection B, burglary of a "vehicle, watercraft, aircraft or other structure, movable or immovable," is a fourth degree felony. *Id.* As *Mathis* instructs, statutory alternatives carrying different penalties "must be elements." 136 S. Ct. at 2256 (citing *Apprendi*, 530 U.S. 466). The statute is divisible into subsection A (residential burglary) and subsection B (non-residential burglary).[8]

Because I find the statute is divisible, I apply the modified categorical approach and first determine whether Marquez was convicted under subsection A or subsection B. *Id.* at 2249 (describing the modified categorical approach). Neither party has submitted documentation of Marquez's prior convictions to the Court, but both parties describe his prior convictions as being for "residential burglary" under § 30-16-3(A). [Doc. 1] at 1–2; [Doc. 8] at 1; [Doc. 15] at 10. Additionally, the PSR characterizes Marquez's prior burglary convictions as residential burglary convictions. PSR at 7–8. Therefore, I find that Marquez was convicted under subsection A of the statute.[9]

---

[8] I have already concluded, in earlier cases, that § 30-16-3 is divisible into subsections A and B. *E.g.*, *United States v. Jimenez*, 16-cv-0661 RB/SMV, [Doc. 18] at 9–10 (D.N.M. Nov. 16, 2016); *United States v. Perez*, 16-cv-0545 RB/SMV, [Doc. 12] at 14 n.7 (D.N.M. Oct. 12, 2016).

[9] Marquez urges that evaluating the statute's divisibility at the outset "puts the cart before the horse." [Doc. 15] at 2. He continues, "[t]he issue is not whether the statute is divisible, but whether the New Mexico offense of burglary of a dwelling is broader than generic burglary." *Id.* I agree that an analysis of whether New Mexico residential burglary is broader than generic burglary is central to reaching a decision in this case, and I embark on such an analysis *infra*. However, I consider that question only after first concluding that the statute is divisible and that Marquez was convicted under subsection A, and not subsection B. Otherwise, if I were to assume that the New Mexico burglary statute were indivisible, the relevant inquiry would be whether New Mexico burglary in its entirety—burglary of a "vehicle, watercraft, aircraft, dwelling or other structure, movable or immovable"—has the same elements as generic burglary. Where a statute is divisible, like this statute, *Mathis* instructs otherwise; the appropriate inquiry, following application of the modified categorical approach, is whether New Mexico burglary of

9

<u>Subsection A of the New Mexico burglary statute (residential burglary)
is substantially similar to generic burglary.</u>

Having concluded that Marquez's prior convictions are for New Mexico residential burglary, I next "compare the elements of the crime of conviction (including the alternative element used in the case) with the elements of the generic crime." *Descamps*, 133 S. Ct. at 2281. I find that New Mexico residential burglary—the unauthorized entry of a dwelling house with the intent to commit any felony or theft therein—is substantially the same as, or narrower than, generic burglary.

The parties agree that *Taylor* sets out the elements of generic burglary: "an unlawful or unprivileged entry into, or remaining in, a building or other structure, with intent to commit a crime." 495 U.S. at 599; *see also Mathis*, 136 S. Ct. at 2248 (quoting *Taylor* for the generic definition); [Doc. 1] at 20 (quoting *Taylor*, 495 U.S. at 599); [Doc. 8] at 5–6 (quoting *Mathis*, 136 S. Ct. at 2248). The parties dispute the breadth of the locational element of both generic burglary and New Mexico residential burglary. That is, they dispute whether the definition of "dwelling house" in subsection A of the New Mexico statute is broader than the definition of "building or other structure" in the generic offense.[10]

_____

a "dwelling house" has the same elements as (or narrower elements than) generic burglary. *See Mathis*, 136 S. Ct. at 2256 (characterizing the divisibility question ("elements or means?") as the "threshold inquiry").

[10] To stave off any confusion, I note at the outset that, in the Tenth Circuit, the generic offense of "burglary," as enumerated in the ACCA, is separate from the generic offense of "burglary of a dwelling," as enumerated in the Guidelines. The line of case law interpreting generic burglary is distinct from the line of case law interpreting generic burglary of a dwelling; though perhaps counterintuitive, generic burglary of a dwelling is not merely a specialized type of generic burglary. *Compare, e.g., United States v. Ramon Silva*, 608 F.3d 663, 666–68 (10th Cir. 2010) (analyzing generic burglary), *with Rivera-Oros*, 590 F.3d at 1128–33 (analyzing generic burglary of a dwelling and noting that the analysis is separate from that of generic burglary).

Marquez argues that the locational element of New Mexico residential burglary, "dwelling house," is broader than that of generic burglary, "building or other structure." [Doc. 1] at 19–21. *See generally* [Doc. 15]. He argues that New Mexico residential burglary encompasses the burglary of any of the structures listed in *either* subsection A *or* subsection B of the statute ("any vehicle, watercraft, aircraft, dwelling or other structure, movable or immovable"), provided the structure is used for habitation. [Doc. 1] at 20; [Doc. 15] at 3–4. Therefore, Marquez argues, a person could be convicted under subsection A for burglarizing a movable vehicle in which someone is living. [Doc. 15] at 4, 9 (arguing that a dwelling house could be a "movable vehicle[]" or "watercraft, trailer, mobile home, car, RV, or even tractor-trailer truck in which a person is customarily living"). He further contends that generic burglary is limited to the burglary of a building or other "enclosed space" that is not movable. *Id.* at 8 (citing *Taylor*, 495 U.S. at 598, and *Shepard v. United States*, 544 U.S. 13, 15–16 (2005)). Because, as he maintains, generic burglary does not accommodate the burglary of movable structures such as motor vehicles, even where used as habitations, New Mexico residential burglary is overbroad. Thus, Marquez argues, his prior convictions for residential burglary cannot qualify as violent felonies under the enumerated clause of the ACCA.

The United States disagrees, arguing that subsection A should be cabined by its plain language, which refers only to burglary of a "dwelling house" and does not refer to burglary of "vehicles, watercrafts, and aircrafts." [Doc. 8] at 8–9. The government urges the Court not to let state law interpretations of the *non-residential* burglary subsection inform the scope and meaning of *residential* burglary. *Id.* at 10–11. The government also points out that New Mexico law

further narrows "dwelling house" to only those structures "customarily used as living quarters." *Id.* at 9.

I find Marquez's argument unpersuasive. First, New Mexico residential burglary is not as broad as Marquez claims; it is not susceptible to the interpretation that he urges the Court to accept. Rather, a plain-text reading of the statute, the Supreme Court's decision in *Mathis*, and state court decisions interpreting convictions under subsection A compel a finding that New Mexico residential burglary does not include the burglary of all the structures listed in § 30-16-3, including movable structures. Nor does the Tenth Circuit construe generic burglary as narrowly as Marquez claims. Even if New Mexico courts interpreted residential burglary to include the burglary of a movable vehicle in which a person was living, the residential burglary subsection would *still* comport with the generic definition. The Tenth Circuit has held that generic burglary encompasses burglary of such structures when they are used as habitations. Ultimately, there is no realistic probability that New Mexico courts would construe burglary of a "dwelling house" in a way that would render it overbroad. *See Gonzales*, 549 U.S. at 193.

*New Mexico residential burglary is not susceptible
to the broad interpretation Marquez urges—It does not encompass
the burglary of all structures listed in § 30-16-3.*

New Mexico residential burglary—the burglary of a "dwelling house," under subsection A of the burglary statute—simply does not encompass, as Marquez suggests, the

burglary of any and all structures listed in § 30-16-3(B), so long as the structure is used as a habitation.[11]

First, such an interpretation would defy a plain-text reading of the statute and would impermissibly disregard the mandate of *Mathis*. The New Mexico legislature purposefully separated burglary of a dwelling house from all other types of burglaries by dividing the burglary statute into two subsections, carrying two different punishments, based on their respective locational elements—subsection A (dwelling houses, a third degree felony) and subsection B (vehicles, watercrafts, aircrafts, and other structures, movable or immovable, a fourth degree felony). *See* § 30-16-3(A)–(B). It defies logic to read subsection A as encompassing burglary of a vehicle, for example, when subsection B of the very same statute—and subsection B alone— explicitly refers to burglary of a vehicle. That the subsection B structures, as Marquez points out, "also appear[] in the introductory paragraph to § 30-16-3, which defines all types of New Mexico burglary," is immaterial under *Mathis* when, as here, a statute is divisible. *See* [Doc. 15] at 5. According to the *Mathis* modified categorical approach, when a statute is divisible into multiple alternative elements, courts must compare the crime of conviction against the generic offense using the specific alternative element that was used to convict the

---

[11] Marquez relies on a tortured reading of the New Mexico burglary statute in order to reach this conclusion. He argues that all the structures listed in subsection B can be read into subsection A by dint of the fact that New Mexico Uniform Jury Instruction ("UJI") 14-1631 defines "dwelling house" as "any *structure*, any part of which is customarily used as living quarters." (emphasis added); *see* [Doc. 15] at 3–4. This single thread of connectivity— the presence of the word "structure" in UJI 14-1631—renders the subsection B structures applicable to subsection A, he argues. *Id.* He further contends that because "the term 'other structure[]' also appears in the introductory paragraph to § 30-16-3, which defines all types of New Mexico burglary," New Mexico courts' analyses of that term bind to subsection A as well as subsection B. *Id.* at 5. Under this guise, he relies on New Mexico case law interpreting the locations enumerated in subsection B to argue how broad subsection A can be. *Id.* at 4–9 (citing New Mexico case law). For the reasons set out *infra*, his reliance on case law evaluating convictions under subsection B of the statute is unavailing.

defendant—in this case, "dwelling house" and not "vehicle, watercraft, aircraft or other structure, movable or immovable." *See* 136 S. Ct. at 2256. *Mathis* directs courts away from analyzing a statute globally when the statute, like New Mexico burglary, is divisible.

Second, Marquez supplies no authority to support his theory that the locations enumerated in subsection B (and the case law interpreting them) can be applied to subsection A—that the language in UJI 14-1631 defining "dwelling house" provides a hook sufficient to reel in this whole separate body of case law. He cites no case in which a New Mexico court relied on an interpretation of a subsection B structure to evaluate a conviction under subsection A. He cites no case in which a New Mexico court interpreted the meaning of "dwelling house" or elaborated on the definition supplied in UJI 14-1631.[12, 13] That Marquez has failed to identify any such authority tends to suggest that there is no realistic probability that the

---

[12] Marquez does cite to two cases that contemplate burglarized "dwelling[s]" under New Mexico's separate *aggravated* burglary statute, § 30-16-4, though neither case alters my analysis. *See* [Doc. 15] at 4 (citing *State v. Anaya*, 2015 WL 2092804, at *4 (N.M. May 4, 2015) (unpublished), and *State v. Daugherty*, 2013 WL 4105525, at *4 (N.M. Aug. 1, 2013) (unpublished)). In both cases, the New Mexico Supreme Court upheld the defendant's conviction for aggravated burglary where the defendant burglarized a "trailer [the victims] rented from [the defendant]," *Anaya*, 2015 WL 2092804, at *1, and a "mobile home," *Daugherty*, 2013 WL 4105525, at *1. Marquez asserts that because the Court referred to such structures as "dwellings," these cases support his position that New Mexico residential burglary encompasses "moving structures." [Doc. 15] at 4. I am not persuaded. First, New Mexico's aggravated burglary statute is not split into subsections, so conviction in these cases did not depend on whether the burglarized structures were dwellings. And, in fact, the Court in these cases embarked on no such analysis—it only referred to the structures in passing as a "dwelling or other structure" or a "dwelling." Finally, as discussed *infra*, the Tenth Circuit has held that generic burglary *does* encompass trailers and like structures that are utilized as habitations.

[13] Marquez also cites a New Mexico Supreme Court case from 1967 that he claims upheld a conviction for "burglary of a dwelling" where the burglarized structure was a drugstore at which the owner "habitually slept on a cot." [Doc. 15] at 3–4 (citing *State v. Hudson*, 1967-NMSC-164, ¶¶ 10–11, 78 N.M. 228). However, *Hudson* was decided prior to the division of New Mexico burglary into a third-degree felony (for residential burglary) and a fourth-degree felony (for non-residential burglary). *See* UJI 14-1631, committee commentary. Thus, conviction did not depend on whether the burglarized building was a "dwelling" under the statute. Furthermore, the Court explicitly noted that the issue before it was *not* whether the building was a "dwelling." *See Hudson*, 1967-NMSC-164, ¶ 10. Rather, the issue was whether there was a material variance between the information (charging burglary of a "dwelling" belonging to the victim) and the proof presented at trial (establishing burglary of victim's shop, which was "designed for occupancy and use by humans" and "had been adapted for such use on a 24-hour basis, thus assuming the character of a dwelling"). *Id.* ¶ 11.

residential burglary statute would be applied in the manner he proposes. *See Gonzales*, 549 U.S. at 193.

Finally, consideration of the limited case law from the New Mexico courts addressing convictions under subsection A contravenes Marquez's interpretation and further compels the outcome that I recommend. The few cases interpreting burglary of a "dwelling house" have done so under narrow factual circumstances—namely, determining whether a house or similar structure (e.g., a garage attached to a house) met the "living quarters" requirement of "dwelling house." In *State v. Ervin*, the New Mexico Court of Appeals held that a burglarized house was a "dwelling house" under § 30-16-3(A) because the defendant could not establish that the previous occupant "had abandoned the house or had no intention of returning." 1981-NMCA-068, ¶¶ 1, 4, 96 N.M. 366, 367. The court cited with approval the common law rule that "a building is not a dwelling before the first occupant has moved in; nor does it continue to be a dwelling after the last occupant has moved out with no intention of returning." *Id.* ¶ 3. *Ervin* suggests that New Mexico residential burglary concerns only those structures that lend themselves to occupancy over some fixed period of time, not just brief or fleeting habitation. *See id.*; *see also State v. Lara*, 1978-NMCA-112, ¶¶ 4–5, 92 N.M. 274, 275 (holding that a garage attached to a residence but from which there was no direct access to the interior of the house was a "dwelling house" under the residential burglary statute "because the garage was a part of the structure used as living quarters"). These analyses of what constitutes a "dwelling house" are far removed from the type of analysis Marquez envisions.

In the one case in which a New Mexico court actually discussed the subsection B structures in evaluating a conviction under subsection A, the New Mexico Court of Appeals rejected the argument Marquez raises here. *State v. Ruiz*, 1980-NMCA-123, 94 N.M. 771, *superseded by statute on other grounds as stated in State v. McCormack*, 1984-NMCA-042, ¶ 12, 101 N.M. 349, 351–52. In *Ruiz*, the court addressed the meaning of "dwelling house" in the context of holding that criminal trespass is a lesser included offense of residential burglary. *Id.* ¶¶ 40–46. The court explained that "[t]he offense charged was burglary of a dwelling house; thus, we are not concerned with vehicles, watercraft or aircraft, or other structures." *Id.* ¶ 39. In comparing the respective locational elements of residential burglary (entry of a "dwelling house") and criminal trespass (entry of "lands of another"), the court held that trespass is a lesser included offense of residential burglary because entry of a dwelling house necessarily means entry "upon the lands of another." *Id.* ¶ 45 (internal quotation marks omitted). "Lands," the court stated, "includes buildings and fixtures, and is synonymous with real property." *Id.* (internal quotation marks omitted). "When one enters another's dwelling house, . . . one has entered lands of another." *Id.* The court was careful to note that "[t]his reasoning, of course, would not apply if the burglary was of a vehicle, watercraft or aircraft." *Id.* The court in *Ruiz* stated plainly (albeit in dicta) that the locational element of residential burglary is limited to fixed structures and excludes vehicles and the like.

Marquez argues that a person could be convicted under subsection A for burglarizing a subsection B structure, such as a vehicle, in which someone was living. But he cites no case in which a New Mexico court has considered—much less accepted—this proposition. The

interpretation he urges simply has not been borne out by the case law. And, in fact, the few cases that have interpreted subsection A point to the opposite conclusion. Subsection A of the burglary statute is not susceptible to the broad interpretation that Marquez asks the Court to give it. The locational element of New Mexico residential burglary is limited to fixed structures and does not extend to movable structures, such as vehicles, set out in the separate non-residential burglary subsection.

*Generic burglary is broader than Marquez argues it is—*
*It includes the burglary of a vehicle used as a habitation.*

Even if the New Mexico residential burglary statute could be read to include the burglary of a vehicle in which a person were living, as Marquez maintains, it still would not be overbroad, because generic burglary in the Tenth Circuit is not as narrow as Marquez contends it is. There is no question that generic burglary excludes the burglary of "vehicles," that is, movable structures used for transportation. *Taylor*, 495 U.S. at 599 (generic burglary's locational element does not include "automobiles"); *Shepard*, 544 U.S. at 15–16 (generic burglary is limited to burglaries "committed in a building or enclosed space . . ., not in a boat or motor vehicle"); *Mathis*, 136 S. Ct. at 2250 (Iowa statute was overbroad where it reached "any building, structure, *[or] land, water, or air vehicle*" (emphasis and alteration in original) (internal quotation marks omitted)). Marquez, however, interprets the Supreme Court's language on vehicles and movable structures to mean that generic burglary can never encompass the burglary of any movable structure, even when such structure is used as a habitation. *See* [Doc. 15] at 8, 9.

The Tenth Circuit has spoken on this issue. In *United States v. Spring*, the court held that generic burglary encompasses the burglary of a "mobile home or vehicle adapted for the

overnight accommodation of persons."  80 F.3d 1450, 1462 (10th Cir. 1996) (internal quotation marks omitted).  The court in *Spring* noted that the Texas statute at issue did "not include vehicles in the sense in which *Taylor* intended," that is, vehicles whose sole or primary purpose is transportation, rather than habitation.  *Id.*  In reaching this conclusion, the court pointed to the purpose behind the inclusion of burglary as a predicate offense and *Taylor*'s differentiation between burglary of a building and burglary of a car: the burglary of structures such as homes poses a risk of violence to the occupants of the house or other structure.  *Id.* (quoting *United States v. Sweeten*, 933 F.2d 765, 771 (9th Cir. 1991), *overruled by United States v. Grisel*, 488 F.3d 844 (9th Cir. 2007)).  The burglary of a vehicle, by contrast, is more like a property crime; it is less severe because it does not pose the same risk of violent confrontation.  *Id.* (quoting *Sweeten*, 933 F.2d at 771).  The burglary of a mobile home or like structure "adapted for the overnight accommodation of persons" is much more like the burglary of a home than a vehicle. *Id.* (quoting *Sweeten*, 933 F.2d at 771).  Indeed, as the court noted, it "is often likely to pose a greater risk of violence to the occupant or owner than the burglary of a building or house because it is more difficult for the burglar to enter or escape unnoticed."  *Id.* (quoting *Sweeten*, 933 F.2d at 771).

The Tenth Circuit reiterated the holding of *Spring* in *Ramon Silva*, 608 F.3d at 668. "'[T]he generic definition [of burglary] broadly construes the possible settings for burglary,'" the court noted.  *Id.* (second alteration in original) (quoting *United States v. Cummings*, 531 F.3d 1232, 1235 (10th Cir. 2008)).  It is not restricted to "permanent" spaces "designed for *human habitation or business*."  *Id.* (internal quotation marks omitted).    Generic burglary is

"'coterminous,'" the court concluded, with a state statute that prohibits burglary of "'a building or other place designed to provide protection for persons or property against weather or intrusion,'" but that does not include "'vehicles or other conveyances *whose primary purpose is transportation*.'"[14]  *Id.* (emphasis added) (quoting *Cummings*, 531 F.3d at 1235–36).

Thus, while the law is clear that generic burglary does not include those movable structures "whose primary purpose is transportation," *id.* (internal quotation marks omitted), in the Tenth Circuit, mobile homes, trailers, and like structures used for habitation *do* satisfy generic burglary's locational element.[15]  The hypothetical situation to which Marquez repeatedly turns in his briefing—a person living in a car or movable trailer—does not, in fact, run afoul of the definition of generic burglary within the Tenth Circuit.[16]

Ultimately, underlying my comparison of New Mexico residential burglary with generic burglary is the Supreme Court's mandate that there must be "a realistic probability, not a

---

[14] Marquez suggests that the Court disregard the analysis in *Ramon Silva* because it misapplied the modified categorical approach.  [Doc. 15] at 10–12.  It is true that *Mathis* rendered incorrect the application of the modified categorical approach in *Ramon Silva*.  However, application of the modified categorical approach is separate from analysis of the breadth of generic burglary.  The latter analysis, which I cite *supra*, is unaltered by *Mathis*.

[15] Other circuits have reached the same conclusion as the Tenth Circuit.  *See United States v. Constante*, 544 F.3d 584, 585 (5th Cir. 2008) (per curiam) (referencing the same Texas statute at issue in *Spring* and noting that the Fifth Circuit has reached the same conclusion) (citing *United States v. Silva*, 957 F.2d 157, 162 (5th Cir. 1992)); *United States v. Nance*, 481 F.3d 882, 887–88 (6th Cir. 2007) (holding that a conviction under Tennessee law for burglary of a "habitation"—which the state statute defined to include buildings, mobile homes, and trailers, among other structures, used for overnight accommodations—satisfied the generic definition of burglary and was a qualifying violent felony under the ACCA).  As Marquez points out, the Fourth Circuit has reached the opposite conclusion. [Doc. 15] at 13–14 (citing *United States v. White*, 836 F.3d 437 (4th Cir. 2016), and *United States v. Henriquez*, 757 F.3d 144 (4th Cir. 2014)).  The Eighth and Ninth Circuits have adopted positions similar to that of the Fourth Circuit.  *United States v. Sims*, 2017 WL 1500308, at *2 (8th Cir. Apr. 27, 2017); *Grisel*, 488 F.3d at 850–51.

[16] In addition to the Fourth Circuit's decisions in *White* and *Henriquez*, Marquez urges the Court to follow the positions adopted by the District of Kansas and other courts outside this District finding various state burglary statutes to be broader than generic burglary because they encompass movable structures.  *See* [Doc. 15] at 13–16.  The cases he cites are largely foreclosed by the Tenth Circuit's rationale in *Spring* or are otherwise distinguishable from the present case.  Moreover, to the extent they do provide support for Marquez's position, none is binding on this Court.

theoretical possibility, that the [s]tate would apply its statute to conduct that falls outside the generic definition of a crime." *Gonzales*, 549 U.S. at 193. To make such a finding "requires more than the application of legal imagination to a state statute's language." *Id.* Marquez asks the Court to conjure a circumstance under which a person could be convicted under subsection A for burglarizing a structure listed in subsection B—and not just any structure, but one, utilized as a dwelling, that would fall outside the Tenth Circuit's permissive conception of the locational element of generic burglary. *See Ramon Silva*, 608 F.3d at 668. Marquez himself does not point to any such case. There is no realistic probability that New Mexico courts would apply the residential burglary statute to a locational element outside the generic definition.

I find that burglary of a dwelling under § 30-16-3(A) meets the generic definition of "burglary." Further, there is no realistic probability that the New Mexico courts would interpret the provision in a manner that would sever this correspondence in the future. Therefore, New Mexico's residential burglary statute, § 30-16-3(A), qualifies as an enumerated "violent felony" under the ACCA, 18 U.S.C. § 924(e)(2)(B), irrespective of the now-unconstitutional residual clause.[17]

### Marquez's conviction for New Mexico aggravated assault with a deadly weapon qualifies as a violent felony under the force clause of the ACCA.

The force clause of § 924(e)(2)(B) provides that an underlying felony conviction is a "violent felony" where it "has as an element the use, attempted use, or threatened use of physical

---

[17] Several other opinions in this District have reached the same conclusion. *See, e.g.*, *Turrieta v. United States*, 16-cv-0395 JAP/KK, [Doc. 10] at 6–8 (D.N.M. Oct. 28, 2016); *United States v. Tolentino*, 16-cv-0583 MV/LAM, [Doc. 12] at 10–14 (D.N.M. Feb. 17, 2017); *United States v. Sedillo*, 16-cv-0426 MCA/LAM, [Doc. 18] at 11–13 (D.N.M. Mar. 6, 2017); *Sandoval v. United States*, 16-cv-0410 LH/CG, [Doc. 16] at 5–7 (D.N.M. Apr. 18, 2017); *United States v. Alires*, 14-cr-3902 JB, [Doc. 43] at 28–36 (D.N.M. May 1, 2017).

force against the person of another."  Again, courts apply the categorical approach (after, where necessary, applying the modified categorical approach to divisible statutes, as described *supra*), looking only to the elements of the crime of conviction and ignoring the particular underlying facts.  *Descamps*, 133 S. Ct. at 2283.  Courts must determine whether the least culpable conduct criminalized by the underlying statute of conviction satisfies the physical force requirement of § 924(e)(2)(B)(i).  State law governs determinations of the force required for conviction of the underlying offense.  *Harris*, 844 F.3d at 1264.  And federal law controls the meaning of "physical force" under the force clause.  *Id.*; *see also Johnson v. United States* ("*C. Johnson*"), 559 U.S. 133, 138–40 (2010) (interpreting "physical force" to require "*violent* force—that is, force capable of causing physical pain or injury to another person").

Marquez was convicted of aggravated assault, § 30-3-2.  That statute provides:

> **Aggravated assault**
>
> Aggravated assault consists of either:
>
> **A.**  unlawfully assaulting or striking at another with a deadly weapon;
>
> **B.**  committing assault by threatening or menacing another while wearing a mask, hood, robe or other covering upon the face, head or body, or while disguised in any manner, so as to conceal identity; or
>
> **C.**  willfully and intentionally assaulting another with intent to commit any felony.

§ 30-3-2.  There is no dispute that Marquez was convicted of aggravated assault with a deadly weapon, § 30-3-2(A).  *See* [Doc. 1] at 2; [Doc. 8] at 1; *see also* PSR at 8.

The Tenth Circuit's recent decision in *United States v. Maldonado-Palma*, 839 F.3d 1244, dictates the outcome here.[18] The court first held that the New Mexico aggravated assault statute is divisible—it consists of three subsections setting out alternative elements. *Id.* at 1247. It went on to hold that § 30-3-2(A), aggravated assault with a deadly weapon, is categorically a "crime of violence" under the force clause of Guidelines § 2L1.2. *Id.* at 1248–50. Aggravated assault with a deadly weapon requires the *use* (and not just the mere possession) of a deadly weapon in carrying out the assault. *Id.* at 1250. In New Mexico, a deadly weapon is one that is "'capable of producing death or great bodily harm . . .; or any other weapon[] with which dangerous wounds can be inflicted.'" *Id.* (first alteration in original) (quoting NMSA 1978, § 30-1-12(B)). Employing such a weapon in an assault "necessarily threatens the use of physical force, i.e., 'force capable of causing physical pain or injury to another person.'" *Id.* (quoting *C. Johnson*, 559 U.S. at 140). Therefore, the court concluded, New Mexico aggravated assault with a deadly weapon is categorically a crime of violence. *Id.*

The holding of *Maldonado-Palma* applies in equal measure to the identically worded force clause of the ACCA's definition of violent felony. Interpretations of the force clause in the Guidelines context are equally applicable in the ACCA context, and vice versa. *See id.* at 1248 (relying on interpretation of "physical force" in ACCA case to inform meaning of Guidelines force clause); *Ramon Silva*, 608 F.3d at 671 ("Given the similarity in language between the ACCA and [Guidelines], we have occasionally looked to precedent under one provision for

---

[18] In his motion, which was filed before *Maldonado-Palma* was decided, Marquez argued that his aggravated assault conviction did not qualify under the force clause, urging the Court to adopt the position taken by the Sixth Circuit in *United States v. Rede-Mendez*, 680 F.3d 552, 560 (6th Cir. 2012). [Doc. 1] at 2–7. In his reply, Marquez acknowledged the outcome of *Maldonado-Palma*, which had been decided in the interim, and noted only that he "disagrees with" the holding and "relies on the arguments he made" in his motion. [Doc. 15] at 1–2.

guidance under another."); *United States v. Mitchell*, 653 F. App'x 639, 642 (10th Cir. 2016) ("We have consistently applied the same analysis to the career offender provision and the analogous provision of the ACCA where the clauses are virtually identical." (internal quotation marks omitted)).   In other words, *Maldonado-Palma* compels a finding that New Mexico aggravated assault with a deadly weapon qualifies as a violent felony under the force clause of the ACCA.  Therefore, New Mexico's aggravated assault with a deadline weapon statute, § 30-3-2(A), qualifies as an enumerated "violent felony" under the ACCA, 18 U.S.C. § 924(e)(2)(B), irrespective of the now-unconstitutional residual clause.

### <u>Conclusion</u>

Marquez's two prior convictions for residential burglary and one prior conviction for aggravated assault with a deadly weapon qualify as violent felonies under the enumerated clause and force clause of the ACCA's definition of violent felony, respectively.  Because Marquez has three qualifying prior convictions, irrespective of the now-unconstitutional residual clause, I find that he is not entitled to re-sentencing and I recommend that his motion be denied.

**IT IS THEREFORE RECOMMENDED** that Defendant Leonard G. Marquez's Motion to Correct Sentence Pursuant to 28 U.S.C. § 2255 [CR Doc. 59; CV Doc. 1] be **DENIED** and that case No. 16-cv-0641 LH/SMV be **DISMISSED with prejudice**.

**THE PARTIES ARE FURTHER NOTIFIED THAT WITHIN FOURTEEN DAYS OF SERVICE** of a copy of these Proposed Findings and Recommended Disposition, they may file written objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636(b)(1). **A party must file any written objections with the Clerk of the District Court within the fourteen-day period if that party wants to have appellate review of the proposed findings and recommended disposition.** *See* **D.N.M.LR-Civ. 10.1. If no objections are filed, no appellate review will be allowed.**

_____
**STEPHAN M. VIDMAR**
**United States Magistrate Judge**